COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Hodges
Argued at Richmond, Virginia


HERITAGE HALL BLACKSTONE AND
 THE VIRGINIA INSURANCE RECIPROCAL
                                  MEMORANDUM OPINION* BY
v.    Record No. 0036-99-2        JUDGE WILLIAM H. HODGES
                                     OCTOBER 19, 1999
TEMPERANCE A. HENLEY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Andrea L. Bailey (Crews & Hancock, P.L.C., on
          brief), for appellants.

          No brief or argument for appellee.


     Heritage Hall Blackstone and its insurer (hereinafter

referred to as "employer") appeal a decision of the Workers'

Compensation Commission (commission) awarding benefits to

Temperance A. Henley (claimant).  Employer contends that the

commission erred in finding that claimant proved that her

cervical disc condition and March 2, 1998 surgery were causally

related to her compensable July 17, 1996 injury by accident.

Finding no error, we affirm the commission's decision.

     "The actual determination of causation is a factual finding

that will not be disturbed on appeal if there is credible

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

evidence to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

So viewed, the evidence established that on July 17, 1996, claimant sustained a compensable accident while working for employer as a charge nurse. The accident resulted in a cervical and thoracic strain. She testified that a 264 pound patient rolled onto her arm. At that time, she initially felt pain in her arm and neck, and later felt numbness.

Claimant sought medical treatment two days later from Dr. Stacey Katany, who noted paraspinal muscle spasm on the right side involving the C6-C7 region as well as the trapezius and rhomboid muscles. Dr. Katany released claimant to return to work on July 22, 1996 without restrictions.

Between July 22, 1996 and October 1997, claimant continued to work, but did not perform her normal duties. Claimant's co-worker, Jennifer Grubb, corroborated claimant's testimony that during the fifteen-month period after the July 1996 accident, claimant was in a great deal of pain and required the assistance of other employees to help her with her duties. Claimant also limited her activities outside of work due to episodes of pain. Claimant admitted that she did not seek

further medical attention between July 1996 and October 1997 for her neck or shoulder problem.

On October 9, 1997, claimant sought treatment with Dr. Cliff Walton for shoulder pain. Dr. Walton recorded a history of knots in claimant's right shoulder since her work injury with occasional tingling in her right hand. He also noted muscle spasms in her arm and shoulder. On October 27, 1997 and November 20, 1997, claimant was treated by Dr. Melissa Bradner for complaints of shoulder and neck pain. Dr. Bradner later confirmed that both visits were for complaints related to claimant's July 17, 1996 work-related accident.

On November 11, 1997, upon referral from Dr. Bradner, Dr. John Ayres, an orthopedist, examined claimant. Dr. Ayres recorded a history of the July 1996 work-related accident and that claimant "had intermittent pains that Motrin would handle until about a month and half ago, when the discomfort in her back seemed to get progressively worse." Dr. Ayres diagnosed chronic cervical thoracic and right shoulder strain. Dr. Ayres noted in January 1998, that a December 1997 MRI indicated a possible cervical disc injury at the C5-6 level on the right side.

On February 6, 1998, Dr. Kenneth Kiluk, a neurosurgeon, examined claimant. Dr. Kiluk recorded a history of the July 1996 work-related accident and noted that claimant continued to

work despite ongoing pain.  He noted that in October 1997, claimant's pain became considerably worse.  On March 2, 1998, Dr. Kiluk performed an anterior cervical disc resection at the C5-6 level on claimant.  In his February 12, 1998 Attending Physician's Report, Dr. Kiluk causally related the cervical disc injury to the July 17, 1996 work-related accident.  In his March 2, 1998 Operative Report, Dr. Kiluk noted that the causal connection was "difficult to determine" in light of the fact that claimant did not seek medical treatment for her condition for about one and one-half years after the accident.  He did note that she was "having increasing symptoms of right radicular pain with some triceps weakness and some numbness in the dorsum of her hand."

On May 20, 1998, Dr. W.E. Thompson reviewed claimant's medical records upon employer's request.  Dr. Thompson opined that "there is no causal relationship whatsoever between the cervical procedure of March 2, 1998 and the work injury of July 17, 1996."

In ruling that claimant "persuasively established that her cervical disc injury was caused by the compensable work accident," the commission found as follows:

> [A]fter her July 17, 1996, accident, the
> claimant was never able to resume her normal
> activities, and continued to suffer pain
> from her injury.  The claimant's testimony
> in that regard is fully corroborated by her
> co-worker's testimony, and is consistent

with the histories recorded by the health care providers. . . .

A finding of causation is also supported by the medical record. Dr. Bradner . . . confirmed that the treatment beginning October 27, 1997, was related to the July 1996 work accident. Dr. Ayres . . . recorded an accurate history of the . . . accident and [claimant's] ensuing symptoms. . . . Although he made no specific statement regarding causation, his diagnosis of the chronic strains juxtaposed to the accurate history certainly implies a causal relationship. Dr. Kiluk . . . provided an Attending Physician's Report which specifically supported the causal relationship.

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). In its role as fact finder, the commission was entitled to weigh the medical evidence. The commission did so and accepted the opinions of Drs. Bradner, Ayres, and Kiluk, while rejecting the contrary opinion of Dr. Thompson, who never examined or treated claimant. The commission considered Dr. Kiluk's statement in his operative report that the causal relationship "is difficult to determine." The commission was entitled to conclude that Dr. Kiluk's statement did "not necessarily negate his previously articulated opinion that the cervical disc injury was caused by the work accident." "Questions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal

- 5 -

<u>Co.</u>, 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). The medical records and opinions of Drs. Bradner, Ayres, and Kiluk, along with the testimony of claimant and her co-worker, constitute credible evidence supporting the commission's decision. "[T]he commission was free to credit claimant's testimony at the hearing as a basis for its finding of causation. The fact that contrary evidence may appear in the record 'is of no consequence if there is credible evidence to support the commission's finding.'" <u>Dollar General Store v. Cridlin</u>, 22 Va. App. 171, 177, 468 S.E.2d 152, 155 (1996) (quoting <u>Wagner Enters., Inc. v. Brooks</u>, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>